IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-65

 No. COA20-458

 Filed 16 March 2021

 Wayne County, No. 17 JA 62

 IN THE MATTER OF: J.C.-B.

 Appeal by respondent from order entered 16 March 2020 by Judge Ericka Y.

 James in Wayne County District Court. Heard in the Court of Appeals 24 February

 2021.

 E.B. Borden Parker for petitioner-appellee Greene County Department of Social
 Services and White & Allen P.A., by Delaina Davis Boyd, for custodian (joint
 brief).

 Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender J. Lee
 Gilliam, for respondent-appellant.

 Poyner & Spruill, LLP, by John Michael Durnovich and Christopher S. Dwight,
 for Guardian ad Litem.

 TYSON, Judge.

¶1 Respondent-mother appeals from a trial court order awarding custody of her

 son, Jacob, to his maternal grandmother (“Grandmother”), and eliminating visitation

 and reunification with Jacob from her permanent plan. See N.C. R. App. P.

 42(b)(1),(b)(4) (permitting the use of pseudonyms to protect the identity of the child).

 We vacate and remand.
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 I. Background

¶2 Respondent-mother attempted suicide and was involuntarily committed.

 Respondent-mother was discharged after spending a week in the hospital. Wayne

 County Department of Social Services (“DSS”) alleged her son, Jacob, who was

 thirteen-year-old at that time, to be neglected and dependent. DSS petitioned for

 nonsecure custody, and Jacob was placed with his maternal grandmother on 26 April

 2017.

¶3 DSS maintained Jacob’s placement with Grandmother after Respondent-

 mother’s discharge. Jacob was adjudicated neglected and dependent on 31 August

 2017. After the disposition hearing, legal custody was continued with DSS and

 Jacob’s placement was continued with Grandmother.

¶4 The permanent plan was set as reunification with Respondent-mother.

 Reunification remained the sole permanent plan at the 8 February 2018 review

 hearing. A permanency planning hearing was scheduled for April, 2018.

¶5 At the 5 April 2018 permanency planning hearing, permanent custody of Jacob

 was awarded to Grandmother and reunification efforts with Respondent-mother were

 ceased. The juvenile court’s jurisdiction over Jacob was converted to a civil custody

 action by order filed 7 June 2018. Respondent-mother appealed the order and soon

 thereafter moved to Texas.

¶6 This Court unanimously vacated the 7 June 2018 order in its entirety and
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 remanded by opinion filed on 26 March 2019. This Court held:

 [T]he trial court must conduct a hearing before entering a
 permanency planning order. This Court has held that the
 language of the statute requires live testimony at the
 hearing; the court cannot rely solely on “the written reports
 of DSS and the guardian ad litem, prior court orders, and
 oral arguments by the attorneys involved in the case.” In
 re D.Y., 202 N.C. App. 140, 143, 688 S.E.2d 91, 93 (2010).
 Accordingly, we vacate the trial court’s permanency
 planning order and the corresponding order terminating
 juvenile court jurisdiction, and we remand this case for
 further proceedings.

 In re J.C.-B. I, 264 N.C. App. 667, 828 S.E.2d 676, 2019 WL 2528342 at *1 (2019)

 (unpublished). The mandate issued on 15 April 2019.

¶7 While her appeal was pending, Respondent-mother initiated an email

 exchange with Jacob in February 2019. They conversed, and she cautioned him to

 avoid using drugs, smoking, drinking, and having sex. The mother and son took turns

 initiating and communicating through emails throughout 2019.

¶8 Dr. Kulikanda Chengappa (“Dr. Chengappa”), Jacob’s psychiatrist,

 recommended that Jacob have “no physical contact with his biological mother at this

 time due to his unstable mental condition” on 11 July 2019. Five days later, DSS

 filed a motion for review and sought to eliminate Respondent-mother’s parental

 rights to visit and contact Jacob. When the guardian ad litem (“GAL”) visited Jacob

 on 24 July 2019, he reported that Jacob was “very relaxed[,]” and “doing well” at

 Grandmother’s home. The GAL failed to report to the court Jacob’s express wishes
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 regarding maintaining visitation and contact with his mother. The GAL

 recommended only for the therapist’s advice to be followed.

¶9 The hearing on DSS’ motion was held 1 August 2019. The trial court ordered

 Jacob and Respondent-mother to have no further contact, the order was filed and

 entered 27 August 2019.

¶ 10 Respondent-mother had emailed a birthday greeting to Jacob’s two email

 addresses in late August 2019. On 24 October 2019, Jacob emailed Respondent-

 mother from his school account stating, “im (sic) going to make a new email so we can

 talk with out they seeing it they cant (sic) stop me from talking to my own mom[.]”

 They exchanged several emails that day. Respondent-mother also sent a Christmas

 message to both of Jacob’s email accounts.

¶ 11 DSS prepared a reunification assessment on 2 January 2020. It stated

 “[s]trengths for the mother are employment, housing and use of community services.”

 It stated needs as “mental health issues of [Jacob] and [Respondent-mother].” Joseph

 Brown (“Mr. Brown”), a new therapist, reported that Jacob was “a very emotionally

 intelligent young man” who “struggle[d] with a lot of anxiety” on 6 January 2020. Mr.

 Brown recommended that Jacob “be allowed to decide when he is ready to pursue a

 relationship with his mother rather than being required.”

¶ 12 The trial court’s hearing upon remand from this Court was not held until 30

 January 2020, over 10 months after this Court’s opinion in the prior appeal. In the
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 order, reunification was eliminated from the permanent plan. The trial court found

 Respondent-mother had mental health issues which prevent her from parenting. The

 court also found Respondent-mother was under order to have no contact with [Jacob],

 but the two had exchanged many emails. Custody of Jacob was granted to

 Grandmother, and Respondent-mother was forbidden from any contact with Jacob

 “until recommended by the juvenile’s therapist.” Respondent-mother again appeals.

 II. Jurisdiction

¶ 13 Jurisdiction is proper pursuant to N. C. Gen. Stat. § 7B-1001(a) (2019).

 III. Issues

 A. Did the trial court err when it failed to make findings regarding Respondent-
 mother’s constitutionally protected parental status and failed to verify the
 custodian’s understanding of legal custody?

 B. Did the trial court err in eliminating reunification from the permanent plan
 when Respondent-mother’s case plan compliance and progress show that
 continued reunification efforts were likely to be successful and would promote
 health, safety and permanence for Jacob?

 C. Did the trial court err when it left contact and visitation in the discretion of
 the therapist without considering Jacob’s and Respondent-mother’s wishes?

 IV. Standard of Review

¶ 14 Prior to depriving parents of their natural and constitutionally protected rights

 of care, custody, and control over their minor child, “[a] trial court must determine by

 clear and convincing evidence that a parent’s conduct is inconsistent with his or her

 protected status.” Weideman v. Shelton, 247 N.C. App. 875, 880, 787 S.E.2d 412, 417
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 (2016) (internal quotation marks omitted).

 The clear and convincing standard requires evidence that
 should fully convince. This burden is more exacting than
 the preponderance of the evidence standard generally
 applied in civil cases, but less than the beyond a reasonable
 doubt standard applied in criminal matters. Our inquiry as
 a reviewing court is whether the evidence presented is such
 that a factfinder applying that evidentiary standard could
 reasonably find the fact in question.

 In re A.C., 247 N.C. App. 528, 533, 786 S.E.2d 728, 733–34 (2016) (alterations,

 citations, and internal quotation marks omitted).

¶ 15 The determination of parental unfitness or whether parental conduct is

 inconsistent with the parents’ constitutionally protected status is reviewed de novo.

 In re D.A., 258 N.C. App. 247, 249, 811 S.E.2d 729, 731 (2018). Under de novo review,

 the appellate court “considers the matter anew and freely substitutes judgment for

 that of the lower tribunal.” Id. (alterations, citations and internal quotations

 omitted).

¶ 16 This Court “reviews an order that ceases reunification efforts to determine

 whether the trial court made appropriate findings, whether the findings are based

 upon credible evidence, whether the findings of fact support the trial court’s

 conclusions, and whether the trial court abused its discretion with respect to

 disposition.” Id.

 V. Analysis
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 A. Respondent-Mother’s Appeal

 1. Fitness

¶ 17 Respondent-mother argues that the trial court erred when it failed to make

 findings regarding her constitutionally protected parental status and failed to verify

 the custodian’s understanding of legal custody. This Court recently and unanimously

 held:

 A natural parent’s constitutionally protected paramount
 interest in the companionship, custody, care, and control of
 his or her child is a counterpart of the parental
 responsibilities the parent has assumed and is based on a
 presumption that he or she will act in the best interest of
 the child. A natural parent may lose his constitutionally
 protected right to the control of his children in one of two
 ways: (1) by a finding of unfitness of the natural parent, or
 (2) where the natural parent’s conduct is inconsistent with
 his or her constitutionally protected status. . . . To apply
 the best interest of the child test in a custody dispute
 between a parent and a nonparent, a trial court must find
 that the natural parent is unfit or that his or her conduct
 is inconsistent with a parent’s constitutionally protected
 status.

 Id. at 250, 811 S.E.2d at 731–32 (alterations, citations, and internal quotations

 omitted).

¶ 18 If the trial court fails to find the parent unfit or to have acted inconsistently

 with her constitutionally protected status, by clear and convincing evidence, a

 permanent custody award to a non-parent must be vacated. In re B.G.,197 N.C. App.

 570, 574, 677 S.E.2d 549, 552 (2009).
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 a. DSS’ and Grandmother’s arguments

¶ 19 DSS and Grandmother concede the trial court did not find nor use the word

 “unfit,” in its conclusion, but argue the order provided ample findings which may

 support “unfitness.” DSS and Grandmother argue the trial court found that Jacob

 and Respondent-mother had lived in a car for a few days in an adjudicatory order

 filed on 6 September 2017.

¶ 20 At that time, the court also found Jacob occasionally forgot his keys, was locked

 out of his home and neighbors would give him water. The court further found

 Respondent-mother drove erratically, ran off the road, threw up and this had scared

 Jacob and found Respondent-mother attempted suicide because she had a “rotten”

 relationship with her girlfriend. The court identified Jacob has lived with

 Grandmother as his custodian since his mother’s suicide attempt and found Jacob is

 afraid of Respondent-mother and wants her to be nicer.

¶ 21 DSS points out Jacob was diagnosed with post-traumatic stress disorder

 (“PTSD”) and Respondent-mother has been treated in mental hospitals on more than

 one occasion, including once after a former girlfriend had committed suicide. DSS

 highlights Respondent-mother has cursed, made inappropriate comments to, and

 threatened to kill Jacob.

¶ 22 DSS and Grandmother rely on the order filed on 16 March 2020 wherein the

 trial court found: Respondent-mother testified she was receiving counseling and
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 medication in Texas, but none of her counselors have filed a report or responded when

 a drug screen was requested. They assert Respondent-mother has significant mental

 health issues that prevent her from being a good parent. Respondent-mother is under

 order to have no contact with Jacob, but she has emailed with him. The court again

 found Jacob lives with Grandmother, is stable and meets the diagnostic criteria of

 PTSD and ADHD.

¶ 23 Finally, DSS and Grandmother argue Respondent-mother moved to Texas in

 2018, rather than working the case plan in North Carolina. DSS and Grandmother

 further assert it is not in Jacob’s best interest to have any contact with Respondent-

 mother unless the therapist recommends it.

 b. Respondent-Mother’s Arguments

¶ 24 Respondent-mother argues Jacob was removed from her custody in 2017 when

 she was involuntarily committed due to an episode of mental illness which required

 inpatient treatment. At that time, Jacob was thirteen years old. No evidence tends

 to show Respondent-mother has suffered another episode, which required acute care

 or hospitalization. DSS had consistently reported that she was engaged in the

 services prescribed for reunification and was making steady progress.

¶ 25 Respondent-mother sought and received treatment for her mental health, and

 testified she was still engaged with treatment at the time of the order pending appeal.

 She visited Jacob when provided opportunities by the trial court and those visits went
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 well. Respondent-mother’s counselor reported in April 2018 that she found “no

 barriers preventing [Respondent-mother] from parenting her child.” Jacob is now

 seventeen years old.

¶ 26 Communicating with a child is not evidence to support a finding of unfitness

 or conduct inconsistent with a parent’s constitutional rights. Sides v. Ikner, 222 N.C.

 App. 538, 549, 730 S.E.2d 844, 851 (2012) (examining the mother’s “intentions and

 conduct” to determine if she “reasonably engaged” in the child’s care under the

 circumstances).

¶ 27 Respondent-mother sought legal process to file a motion for contempt when

 Grandmother did not allow her to visit with Jacob. She answered Jacob’s emails, as

 any caring parent would. She flew from Texas to North Carolina to attend counseling

 appointments and to see and visit with Jacob, even though she had been denied any

 access to her son by the Grandmother. She complied with the plan’s requirements

 and goals DSS and the courts had placed upon her.

¶ 28 Respondent-mother resumed teaching third grade in the fall of 2017. No clear

 and convincing evidence or finding supports a conclusion of unfitness or engaging in

 conduct inconsistent with her parental rights. The trial court erred in awarding

 custody to Grandmother without evidence or findings to conclude Respondent-mother

 was unfit or had acted inconsistently with her constitutionally protected parental

 rights. The court’s order is again erroneous and must be vacated. In re B.G., 197
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 N.C. App. at 574, 677 S.E.2d at 552; see In re J.C.-B. I, 2019 WL 2528342 at *1.

 2. Findings the Custodian Understands Legal Custody

¶ 29 Respondent-mother argues the trial court failed to address Grandmother’s

 understanding of the legal significance of becoming Jacob’s custodian. When the trial

 court appoints a permanent custodian for a juvenile in a neglect and dependency case,

 “the court shall verify that the person receiving custody . . . understands the legal

 significance of the placement.” N.C. Gen. Stat. § 7B-906.1(j) (2019). A permanent

 plan of custody order which does not contain the required verification must be vacated

 and remanded. In re P.A., 241 N.C. App. 53, 65, 772 S.E.2d 240, 248 (2015). But see

 In re J.E., B.E., 182 N.C. App. 612, 616-17, 643 S.E.2d 70, 73 (2007) (affirming

 guardianship order without specific verification findings).

¶ 30 DSS argues if the trial court erred by failing to verify such failure, such error

 is not prejudicial pursuant to N.C. Gen. Stat. § 7B-906.1(j), stating, “[t]he fact that

 the prospective custodian or guardian has provided stable placement for the juvenile

 for at least six consecutive months is evidence that the person has adequate

 resources.” The trial court found on more than one occasion that Grandmother had

 been the caregiver for Jacob under DSS’ placement since 26 April 2017. When

 Respondent-mother filed her brief for this appeal, Jacob had lived with Grandmother

 for more than 39 consecutive months, far exceeding the six consecutive months in the

 statute. Respondent-mother filed a motion for contempt after Grandmother refused
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 to allow her to visit with Jacob.

¶ 31 Under N.C. Gen. Stat. § 7B-906.1, if a “custodian or guardian has provided

 stable placement for the juvenile for at least six consecutive months is evidence that

 the person has adequate resources,” but such evidence does not per se compel a

 conclusion that the “person receiving custody . . . understands the legal significance

 of the placement.” N.C. Gen. Stat. § 7B-906.1(j). During continuing months at a time,

 Respondent-mother was not allowed to communicate with or to visit her child.

¶ 32 DSS and the trial court unexplainedly delayed re-convening the hearing for

 over ten months after Respondent-mother’s previous successful appeal, and then only

 to violate her constitutionally protected parental rights yet again. In re D.A. 258 N.C.

 App. at 250, 811 S.E. 2d at 731-32; see In re J.C.-B. I, 2019 WL 2528342 at *1.

 B. Compliance with Reunification Efforts

¶ 33 This Court reviews the order to cease reunification:

 [to] consider whether the trial court’s order contains the
 necessary statutory findings to cease reunification efforts.
 Under our statutes: “Reunification shall remain a primary
 or secondary plan unless the court made findings under
 G.S. 7B-901(c) or makes written findings that reunification
 efforts clearly would be unsuccessful or would be
 inconsistent with the juvenile’s health or safety.” N.C. Gen.
 Stat. § 7B-906.2(b) (2017). Here, the trial court failed to
 make findings under N.C. Gen. Stat. § 7B-901(c) (2017).
 The court could only cease reunification efforts after
 finding that those efforts clearly would be unsuccessful or
 would be inconsistent with the juvenile’s health or safety.
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 Id. at 253, 811 S.E.2d at 733–34.

 1. Statutory Requirements

¶ 34 Specific evidentiary findings must show:

 (1) Whether the parent is making adequate progress within
 a reasonable period of time under the plan.

 (2) Whether the parent is actively participating in or
 cooperating with the plan, the department, and the
 guardian ad litem for the juvenile.

 (3) Whether the parent remains available to the court, the
 department, and the guardian ad litem for the juvenile.

 (4) Whether the parent is acting in a manner inconsistent
 with the health or safety of the juvenile.

 N.C. Gen. Stat. § 7B-906.2(d) (2019).

¶ 35 The court shall not cease reunification efforts without supported findings and

 conclusions those efforts would be unsuccessful or inconsistent with Jacob’s health or

 safety. In re D.A., 258 N.C. App at 253, 811 S.E.2d at 733-34. Neither the trial court’s

 16 March 2020 order nor DSS’ evaluation provide evidence to support findings

 specifically addressing any of the statutory factors of section 7B-906.2(d).

¶ 36 The court’s findings included: Jacob’s therapist’s belief he needs to remain with

 Grandmother; Respondent-mother testified she was receiving counseling, but did not

 file a report and has not provided a signed release to her counselors; Respondent-

 mother is taking four medications for headaches, mood and anxiety; she has

 significant mental health issues and emailed her son in violation of a court order; and
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 Jacob stated he is now “bigger and stronger” than his mother. These findings, even

 if true, do not support a conclusion to eliminate reunification under the statute. N.C.

 Gen. Stat. § 7B-906.2(d). The trial court’s order does not state adequate findings to

 support its conclusion to cease reunification efforts. Id.

 2. Futile Efforts

¶ 37 DSS and Grandmother argue, “[t]he language of Section 7B-906.2(b) seems

 plainly to provide that a trial court, in any permanency planning hearing, can omit

 reunification as a concurrent plan if it determines that reunification efforts are either

 futile or contrary to the juvenile’s well-being.” In re M.T.-L.Y., 265 N.C. App. 454,

 462, 829 S.E. 2d 496, 502 (2019). DSS argues Respondent-mother failed to visit Jacob

 for more than a year, moved to Texas, and failed to file regarding visitation with Jacob

 until after DSS’ motion to suspend her visitation had been granted on 1 August 2019.

 Finally, DSS argues Respondent-mother has not provided evidence of her mental

 health counseling in Texas.

¶ 38 The transcript and record show DSS’ witnesses answered “yes” to questions of

 whether Respondent-mother was “actively participating in or cooperating with the

 plan, DSS, and the guardian ad litem[.]” DSS’ witnesses also answered “yes” to the

 question of whether Respondent-mother “remain[ed] available to the court, DSS, and

 the guardian ad litem[.]” DSS’ witnesses further answered “no” to the question of

 whether Respondent-mother was “acting in a manner inconsistent with the health or
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 safety of the juvenile[.]”

¶ 39 No evidence tends to show Respondent-mother was abusing prescription

 medications, having mental health breakdowns, or was involved in unhealthy

 relationships for nearly three years after Jacob was removed from her care. Her

 limited communications and visits with Jacob were described as appropriate, warm,

 and affirming.

¶ 40 The social worker further testified Respondent-mother had maintained stable

 employment as a third grade teacher and housing. Respondent-mother testified she

 regularly attended therapy and medication management appointments and named

 her physicians. There were no positive tests for illegal substances.

¶ 41 A finding and conclusion that reunification efforts would be unsuccessful or

 inconsistent with Jacob’s health, safety and need for a permanent home is

 unsupported by clear and convincing evidence and does not meet the mandatory

 requirements of N.C. Gen. Stat.§ 7B-906.2(b).

 3. Reasonable Efforts

¶ 42 “[A]t each permanency planning hearing the court shall make a finding about

 whether the reunification efforts of the county department of social services were

 reasonable.” N.C. Gen. Stat. § 7B-906.2(c) (2019). For DSS’ reunification efforts to be

 “reasonable” under the Juvenile Code, they are statutorily required to be “diligent.”

 N.C. Gen. Stat. § 7B-101(18) (2019).
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

¶ 43 Regarding DSS’ “reasonable efforts” at reunification with Respondent-mother,

 the trial court found DSS had:

 a. Maintained contact with and visits with the juvenile in
 the home of the grandmother;

 b. Collateral contacts with the therapist, the In Home
 Program, and reviewed ECU Neurology reports;

 ....

 d. Contact with the mother.

 e. Permanency Planning reviews;

 f. Completed strengths and needs assessment and a
 reunification assessment and determined that the risk to
 the juvenile if returned to the mother remains high due to
 a poor relationship between the juvenile and the mother.

¶ 44 DSS’ contacts with Jacob in the relative placement were to determine whether

 Jacob was being cared for in that placement. Their actions were not aimed at

 reunifying him with his mother. The collateral contacts were similarly aimed at

 monitoring Jacob’s well-being where he was, not to achieve the goal of reunification.

 Contact with Respondent-mother, reviews, and assessments are undoubtedly an

 important part of monitoring progress towards reunification Nothing in the record

 indicates concrete action steps or that timelines were established from the contacts,

 reviews, and assessments, to reunify Jacob with Respondent-mother.

¶ 45 DSS made no “diligent” or substantial efforts towards reunification in the more

 than 10 months between this Court’s decision in In re J.C.-B. I in March 2019 and
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 the hearing in January 2020. DSS never requested its social services counterpart in

 Texas to assess Respondent-mother’s home in Texas, even after reunification was

 reinstated as the permanent plan with this Court’s mandate in April 2019. Three

 months after this Court vacated the prior unlawful order eliminating reunification,

 DSS successfully moved the trial court in July 2019 to completely cut off all of

 Respondent-mother’s contact with Jacob, even so far as not letting her answer his

 emails. The record does not show the statutorily required efforts by DSS to support

 reunification were “diligent” and reasonable. N.C. Gen. Stat.§ 7B-101(18). These

 statutorily required efforts were arguably non-existent. See id.

 C. Visitation at Discretion of Jacob’s Therapist

¶ 46 To deny visitation, the trial court must make material findings sufficient

 enough to support and conclude a parent has forfeited her right to visitation or by

 findings the parent-child contact is not in the child’s best interest. See In re Custody

 of Stancil, 10 N.C. App. 545, 548, 179 S.E.2d 844, 848 (1971). Fifty years ago, this

 Court stated:

 When the custody of a child is awarded by the court,
 it is the exercise of a judicial function. In like manner,
 when visitation rights are awarded, it is the exercise of a
 judicial function. We do not think that the exercise of this
 judicial function may be properly delegated by the court to
 the custodian of the child . . . To give the custodian of the
 child authority to decide when, where and under what
 circumstances a parent may visit his or her child could
 result in a complete denial of the right and in any event
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 would be delegating a judicial function to the custodian.

 Id. at 552, 179 S.E.2d at 849. Ten years ago, this Court re-stated and re-affirmed,

 “the trial court must set the parameters of visitation[,]”and should not leave visitation

 in the discretion of another person, including a “treatment team” or therapist. In re

 D.M., 211 N.C. App. 382, 388, 712 S.E.2d 355, 358 (2011).

¶ 47 At each permanency planning hearing, the trial court must consider

 information from the GAL and from the juvenile. N.C. Gen. Stat. § 7B-906.1(c) (2019).

 This statutory provision is consistent with long-standing case law holding a trial

 court has a duty both to ascertain and consider the child’s preference in custody

 determinations. Mintz v. Mintz, 64 N.C. App. 338, 341, 307 S.E.2d 391, 394 (1983).

¶ 48 The trial court is not required to abide by a child’s express wishes, but the

 child’s wishes are part of the totality of circumstances the trial court must consider,

 and consider those wishes more particularly as a child approaches majority. See Bost

 v. Van Nortwick, 117 N.C. App. 1, 9, 449 S.E.2d 911, 916 (1994).

¶ 49 One of the duties of a GAL is to ascertain from the child they represent what

 their wishes are and to convey those express wishes accurately and objectively to the

 court. See N.C. Gen. Stat. § 7B-601(a) (2019). Jacob’s wishes as an older teen were

 never sought nor conveyed to the trial court.

 1. Statutory Violations

¶ 50 When an appellant argues the trial court failed to follow a statutory mandate,
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 the error is preserved, and the issue is a question of law and reviewed de novo. See In

 re E.M., 263 N.C. App. 476, 479, 823 S.E.2d 674, 676 (2019). Specifically, violation of

 N.C. Gen. Stat. § 7B-601, the statute listing the GAL’s duties, or N.C. Gen. Stat. §

 7B-906.1(c), the statute listing the evidence to support requirements at a permanency

 planning hearing, requires reversal and remand for a new hearing. In re R.A.H., 171

 N.C. App. 427, 432, 614 S.E.2d 382, 385 (2005).

 2. Jacob’s Wishes

¶ 51 Jacob was sixteen years old at the time of the permanency placement hearing

 under appeal. He was old enough to petition for emancipation, and well past the age

 when a juvenile’s wishes regarding his own placement and associations must be

 considered. N.C. Gen. Stat. § 7B-3500 (2019).

¶ 52 The only recent indication in the record of Jacob’s wishes came from an email

 he sent his mother on 24 October 2019 stating, “im [sic] going to make a new email

 so we can talk with out they [sic] seeing it they cant stop me from talking to my own

 mom[.]” Jacob’s express wishes are missing from the only GAL report in July 2019

 prepared after this Court’s remand, and six months before the January hearing. The

 GAL did not communicate Jacob’s wishes to the court and apparently simply deferred

 to the therapist’s opinion.

¶ 53 The GAL presented letters from service providers, including two that were

 identical to previous letters except for the date. One of those letters, from Dr. Paul
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 Brar in October 2018, was based on examinations in September 2017 and August

 2018. It stated, “[i]n my professional opinion in the best interest of Jacob he should

 not be allowed to have visitation even contact with the mother.”

¶ 54 The GAL presented two letters from Timothy Hunt (“Mr. Hunt”). Mr. Hunt, a

 therapist hired by Grandmother, provided identical letters except one was dated 1

 December 2018 and the other was dated 14 July 2019. Mr. Hunt’s assessment was

 based upon observations he made from October 2017 to May 2018. Mr. Hunt

 recommended that Jacob’s “contact with his mother [be] limited to when [Jacob]

 would like to make contact with her. . . I would ask the court that [Jacob] be allowed

 to decide when he would like to pursue a relationship with his mother rather than

 being required.”

¶ 55 The GAL presented a letter, written by Dr. Chengappa on 11 July 2019, which

 referred to treatment “since 2012.” Dr. Chengappa recommended “[i]t is my

 professional opinion that [Jacob] should have no physical contact with his biological

 mother at this time due to his unstable mental condition.”

¶ 56 The only rationale the therapists’ letters supply is in Mr. Hunt’s letter, “[Jacob]

 is sensitive and struggles with anxiety . . . mother’s behaviors are erratic and cause

 him a lot of internal conflict.” No statements support an order to forbid visitations or

 contact between Jacob and his mother.

¶ 57 Further, the information provided by the GAL was several months old by the
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 time of the January 2020 hearing. The information from both Mr. Hunt and Dr. Brar

 was over a year old. Dr. Chengappa’s information was more than six months old.

¶ 58 The most current information, a letter from Jacob’s current therapist, Mr.

 Brown, which was attached to the DSS report, recommended that Jacob “be allowed

 to decide when he is ready to pursue a relationship with his mother.”

¶ 59 The therapists’ opinions are divided on whether Jacob should be reunited or be

 allowed visitation with his mother, but the most recent recommendation is to allow

 Jacob to decide. The record also shows Jacob’s expressed desire and efforts to

 maintain contact with his mother, which was not communicated to the court by the

 GAL. Why Jacob was not called and permitted to testify is suspiciously missing from

 the record. Jacob is now seventeen years old, eligible for emancipation and his

 opinion carries great weight. See N.C. Gen. Stat. § 7B-3500.

 VI. Conclusion

¶ 60 Our Supreme Court held, “this Court has enunciated the fundamental

 principle that absent a finding parents, (i) are unfit or (ii) have neglected the welfare

 of their children, the constitutionally-protected paramount right of parents to

 custody, care, and control of their children must prevail.” Adams v. Tessener, 354

 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citation and quotation marks omitted).

¶ 61 The trial court erred by granting custody to Grandmother in derogation of

 Respondent-mother’s constitutional rights as a parent without finding her to be unfit
 IN RE J. C.-B.

 2021-NCCOA-65

 Opinion of the Court

 or engaged in conduct inconsistent with her parental rights. The trial court also erred

 by eliminating reunification with Respondent-mother without making proper

 findings of fact after multiple reports and testimony from DSS’ witnesses affirming

 Respondent-mother’s compliance with the plan.

¶ 62 Finally, the court erred when it made contact between Jacob and his mother

 contingent on the therapist’s recommendation without knowing and considering

 Jacob’s wishes. In re D.M., 211 N.C. App. at 388, 712 S.E.2d at 358 (the trial court

 must set the parameters of visitation[,] and should not leave visitation in the

 discretion of another person, including a “treatment team” or therapist.).

¶ 63 For these reasons, the order is vacated and again remanded with instructions

 for immediate entry of an order consistent with this Court’s opinion as contained

 herein. This mandate shall be effective upon filing. It is so ordered.

 VACATED AND REMANDED.

 Judges COLLINS and WOOD concur.